**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| IN RE O'BANNON PLAZA LLC | Case No. 2:14-CV-00107-APG |
|---|---|
| O'BANNON PLAZA LLC,   Appellant,   v.   CAB PROPERTIES, LLC,   Appellee. | OPINION ON BANKRUPTCY APPEAL |

Debtor O'Bannon Plaza LLC appeals the bankruptcy court's order on Debtor's objections to the secured claim of Appellee CAB Properties, LLC ("CAB"). Debtor argues the assignment through which CAB obtained its secured interest is invalid because it conflicts with the underlying deed of trust, and because the note was sold in a manner that violated state and federal securities laws. Alternatively, Debtor argues that if the assignment is valid, CAB owes Debtor amounts held in escrow by the prior lender. Debtor also argues the bankruptcy court erred by failing to reduce CAB's attorney's fees. Finally, Debtor argues CAB should not be entitled to default interest because its overly aggressive conduct wrongfully pushed Debtor into liquidation.

Debtor waived its arguments about the invalidity of the assignment to CAB because Debtor raised those arguments for the first time on appeal. I affirm the bankruptcy court's ruling that CAB was not required to reimburse Debtor for the escrow funds. Finally, I affirm the attorney's fee award.

**I. Background**

Debtor owned property known as O'Bannon Plaza, located on Rainbow Boulevard in Las Vegas, Nevada. (Dkt. #34-3 at 110.) Debtor and First Union National Bank entered into a promissory note and deed of trust secured by the property. (Dkt. #18-2 at 17-29; Dkt. #18-3; Dkt. #18-4; Dkt. #18-5 at 1-6.) The note fully matured on March 1, 2011. (Dkt. #18-2 at 17; Dkt. #34-

2 at 122.) Debtor was unable to refinance or pay off the loan, and filed for Chapter 11 bankruptcy on January 13, 2012. (Dkt. #18-5 at 30; Dkt. #34-2 at 1, 67; Dkt. #34-3 at 100.) Appellee CAB purchased the note through an auction. (Dkt. #18-5 at 24-30; Dkt. #34-3 at 42-46.) CAB did not initially file a proof of claim, but Debtor estimated CAB's secured claim to be $3,193,697.00. (Dkt. #18-2 at 3-4; Dkt. #34-2 at 74, 79.)

Debtor proposed a plan of reorganization pursuant to which Debtor would make monthly payments to CAB for ten years. CAB objected to Debtor's plan of reorganization, moved to appoint a trustee, and moved to convert the case to a Chapter 7 proceeding. (Dkt. #34-2 at 19, 22-23.) CAB objected to Debtor's disclosure statement as materially misleading, and argued the plan of reorganization was deficient for a number of reasons. (Dkt. #18-8-18-10.) The bankruptcy court appointed a trustee on April 11, 2013, but denied the request to convert the case at that point, and allowed Debtor to move forward with confirmation. (Dkt. #34-2 at 26-27; Dkt. #18-10 at 14, 16, 19, 24.)

Following appointment of the trustee, the bankruptcy court granted the motion to convert the case to a Chapter 7 proceeding. (Dkt. #34-2 at 40.) The bankruptcy court thereafter approved the trustee's motion to sell the property free and clear of any liens. (Dkt. #34-2 at 41, 49.) CAB filed a declaration setting forth its claim for the purpose of allowing it to credit bid at the auction, which the bankruptcy court deemed sufficient to constitute a proof of claim. (Dkt. #18-2 at 3-4.) The property was sold at auction to an unrelated third party for $5,575,000. (Dkt. #18-2 at 5.)

Following the auction, Debtor objected to the amount of the sale proceeds CAB claimed it was entitled to in the declaration. (Dkt. #34-3 at 99-107.) Specifically, Debtor argued CAB had not accounted for $35,048.89 Debtor had paid to the prior lender before Debtor filed for bankruptcy, as well as $87,432.24 in escrow funds held by the prior lender that Debtor contended should have been turned over to Debtor upon assignment of the note to CAB. (Dkt. #34-3 at 100-01.) Debtor also argued CAB had not supported its requested attorney's fees nor explained how the requested amount was reasonable. (Dkt. #34-3 at 105-06.) Debtor also challenged CAB's entitlement to charge a default interest rate after the parties had entered into a stipulation

providing for monthly adequate assurance payments to CAB. (Dkt. #34-3 at 106.) The parties filed supplemental briefs and the bankruptcy court held two hearings on the objections. (Dkt. #18-1 at 4-25; Dkt. #34-2 at 52-55.)

The bankruptcy court overruled Debtor's objections to CAB's secured claim except to disallow $15,000 of CAB's requested attorney's fees. (Dkt. #34-2 at 97.) The bankruptcy court thus allowed CAB's secured claim in the following amounts: (1) $3,085,526.03 in principal on the note, (2) $960,324.39 in interest and late charges, and (3) $289,577.64 in costs and expenses, including reasonable attorney's fees, for a total allowed secured claim of $4,335,428.06. (Dkt. #34-2 at 97.) Debtor now appeals the bankruptcy court's rulings.

**II. Waiver**

Debtor raises for the first time on appeal the issue of whether the assignment from the prior lender to CAB was invalid, either because it conflicted with the terms of the deed of trust or because the auction of the note violated state and federal securities laws. Debtor argues that whether CAB should have to pay Debtor the escrowed funds held by the prior lender was an issue throughout the bankruptcy proceedings. Alternatively, Debtor argues extraordinary circumstances warrant my considering the issues for the first time on appeal.

"Absent exceptional circumstances, [the Court] generally will not consider arguments raised for the first time on appeal, although [the Court has] discretion to do so." *In re Am. W. Airlines, Inc.*, 217 F.3d 1161, 1165 (9th Cir. 2000). "Exceptional circumstances exist when: (1) review will prevent a miscarriage of justice; (2) a change in the law raises a new issue pending appeal; and (3) the issue presented is purely one of law and either does not depend upon the factual record developed below, or the pertinent record has been fully developed." *In re Home Am. T.V.-Appliance Audio, Inc.*, 232 F.3d 1046, 1052 (9th Cir. 2000) (internal quotation marks and citation omitted).

Debtor did not argue before the bankruptcy court that the assignment of the note from the prior lender to CAB was invalid. Debtor argued language in the assignment was inconsistent with language in the deed of trust regarding what happened to the escrow funds upon assignment,

but Debtor argued the result was that CAB must pay Debtor the escrow amounts. (Dkt. #35-1 at 8-9.) Debtor did not argue that the alleged inconsistency invalidated the assignment. Likewise, Debtor argued below that the way the note was auctioned violated Nevada law, but that argument was in the context its argument that CAB's fees were unreasonable because CAB was not acting like a reasonable secured creditor. (*Id.* at 15-16.) Debtor did not argue the assignment to CAB was invalid due to the sale of the note being conducted in violation of state law.

No exceptional circumstances support consideration of these arguments for the first time on appeal. Debtor does not identify any change in the law that raised new issues pending appeal. Nor will considering Debtor's newly raised issues prevent a miscarriage of justice. Debtor took the position before the bankruptcy court that CAB owed the escrow funds and Debtor should not have to pursue the prior lender for the funds. Yet its position on appeal that the assignment is invalid would not make CAB liable for the escrow funds and would require Debtor to pursue the prior lender. That is precisely the result Debtor sought to avoid before the bankruptcy court. There is no miscarriage of justice because invalidating the assignment would put Debtor in the same position it is already in. Nothing in the bankruptcy court's ruling prohibits Debtor from pursuing the prior lender for any improperly retained escrow funds, and if the assignment was invalidated Debtor still would have to pursue the prior lender to collect the funds.[1] Further, Debtor's contention that CAB produced documents late in the proceedings is insufficient to establish exceptional circumstances. Debtor obtained the documents before the bankruptcy proceedings concluded, but did not raise any invalidity arguments to the bankruptcy court.

Finally, determining whether a violation occurred would depend upon further factual development that did not occur below because the validity of the assignment was never questioned. The prior lender was not made a party to the proceedings to protect its interests or to provide factual information regarding what happened to the escrow funds. Further, to the extent the assignment is ambiguous, there was no factual development below regarding the intentions of

---

[1] To the extent Debtor argues in its opening brief that the note has been transferred multiple times from one distressed bank to another, Debtor provides no evidence in support. Nor does Debtor provide any evidence that the prior lender is unable to satisfy a judgment.

the contracting parties as to what would happen to excess escrow funds, if any even existed.[2] *See Ringle v. Bruton*, 86 P.3d 1032, 1039 (Nev. 2004) ("When contract language is ambiguous and incomplete, . . . extrinsic evidence may be admitted to determine the parties' intent, explain ambiguities, and supply omissions.").

Debtor did not argue to the bankruptcy court that the assignment is invalid. No exceptional circumstances warrant considering Debtor's invalidity arguments for the first time on appeal. I therefore decline to consider the assignment's alleged invalidity.

**III. Escrow Funds**

I review the bankruptcy court's conclusions of law de novo and its factual findings for clear error. *In re Rains*, 428 F.3d 893, 900 (9th Cir. 2005). Factual findings are clearly erroneous only if the findings "leave the definite and firm conviction" that the bankruptcy court made a mistake. *Id.* (quotation omitted). I may affirm the bankruptcy court's decision "on any ground fairly supported by the record." *In re Warren*, 568 F.3d 1113, 1116 (9th Cir. 2009).

The bankruptcy court overruled Debtor's objection that Debtor could recover the escrow funds from CAB; the court found CAB to be a holder in due course pursuant to Nevada Revised Statutes § 104.3305, and "the language of the governing documents does not require the result requested by the debtor." (Dkt. #18-1 at 18.) Debtor has not challenged the bankruptcy court's finding that CAB is a holder in due course against whom Debtor cannot recover the escrow funds. As a result, I could affirm on this basis alone.

Moreover, Debtor has not shown the bankruptcy court's conclusion regarding the governing documents was legally incorrect or based on a clearly erroneous factual finding. Debtor relies on what it views as an inconsistency between the deed of trust and the purchase agreement pursuant to which CAB bought the note. Under the deed of trust, the prior lender was required to hold in escrow certain reserve accounts for items such as taxes, insurance, and repairs. (Dkt. #18-3 at 19-20.) Debtor argues that the deed of trust required the escrow funds to be turned

---

[2] At the time of the assignment, Debtor was in default on the loan, and it is unclear if the escrow funds were used to cover other amounts due. (*See* Dkt. #34-2 at 21-22 (suggesting prior lender applied some escrow funds to insurance and taxes); Dkt. #34-4 at 30, 100 (same).)

over to the assignee upon assignment, but the purchase agreement between the prior lender and CAB provided that CAB would not receive the escrow funds upon assignment. Debtor thus argues the purchase agreement conflicts with the deed of trust. Debtor also argues the purchase agreement provided that CAB was to fund the escrow accounts upon assignment of the note to CAB.

Debtor has not established that CAB owes any escrowed funds to Debtor under the deed of trust or the purchase agreement. If there were excess funds in the reserves when the prior lender assigned the note to CAB, the deed of trust provides that the prior lender had the option of applying the reserve funds to the amount due or to refund the reserves to Debtor.[3] Nothing in the deed of trust or purchase agreement requires CAB to assume responsibility for those amounts. Rather, the purchase agreement disclaims CAB has any right to those funds or to a credit for those funds.[4] If the prior lender failed to either credit or return excess reserve funds to Debtor, the proper party to pursue is the prior lender, not CAB.

---

[3] Section 1.8(c) of the deed of trust provides:
> Upon assignment of this Deed of Trust by Beneficiary, any funds in the Reserves shall be turned over to the assignee and any responsibility of Beneficiary, as assignor, with respect thereto shall terminate. If the funds in the applicable Reserve shall exceed the amount of payments actually applied by Beneficiary for the purposes and items for which the applicable Reserve is held, such excess may be credited by the Beneficiary on subsequent payments to be made hereunder or, at the option of Beneficiary, refunded to [Debtor]. . . . Upon full payment of the Debt in accordance with its terms or at such earlier time as Beneficiary may elect, the balance of any or all of the Reserves then in Beneficiary's possession shall be paid over to Grantor and no other party shall have any right or claim thereto.

(Dkt. #18-3 at 22.)

[4] Section 3.2 of the purchase agreement provides:
> [CAB] shall not be entitled to any credits on the Closing Statement including, without limitation, any credit with respect to the Escrowed Funds. In addition, [CAB] acknowledges and agrees that it shall not be entitled to receive the Escrowed Funds after the Closing Date and that it shall be solely responsible for establishing and funding the Escrowed Funds under the Loan Documents upon Closing.

(Dkt. #18-6 at 28.) The "Escrowed Funds" include the reserves under the deed of trust. (*Id.* at 22.)

Additionally, Debtor has failed to establish CAB was contractually required to fund the reserve accounts upon assignment. Although CAB agreed under the purchase agreement that it was responsible for establishing and funding the reserves upon closing, CAB had no duty to fund the reserves at that point because Debtor was in default. The reserve funds in section 1.6 of the deed of trust were limited to the designated purposes only "[s]o long as no Event of Default has occurred . . . ." (Dkt. #18-3 at 19.) Section 1.8(c) further provides that "[i]f there is an Event of Default under this Deed of Trust, Beneficiary may, but shall not be obligated to, apply at any time the balance then remaining in any or all of the Reserves against the Debt in whatever order Beneficiary shall subjectively determine." (*Id.*) Likewise, section 1.8(b) provides that in the event of default, the lender

> may, without notice or demand on [Debtor] at its option: (A) withdraw any or all of the funds (including, without limitation, interest) then remaining in the Reserves and apply the same, after deducting all costs and expenses of safekeeping, collection and delivery (including, but not limited to, reasonable attorneys' fees, costs and expenses) to the Debt or any other obligations of the Grantor under the other Loan Documents in such manner as Beneficiary shall deem appropriate at its sole discretion, and the excess, if any, shall be paid to Grantor . . . .

(*Id.*) Because Debtor was in default at the time of the assignment, CAB had no duty to fund reserves.

In sum, Debtor has not appealed the bankruptcy court's ruling that CAB was a holder in due course against whom Debtor could not recover the escrow funds. Additionally, the bankruptcy court's ruling that the underlying documents did not require CAB to pay the reserve funds to Debtor was not legally or factually erroneous. I therefore affirm the bankruptcy court's ruling that CAB does not owe the escrow funds to Debtor.

**IV. Attorney's Fees and Costs**

I review the bankruptcy court's award of attorney's fees for an abuse of discretion or erroneous application of the law. *In re Hoopai*, 581 F.3d 1090, 1095 (9th Cir. 2009). "A bankruptcy court abuses its discretion if it applies the law incorrectly or if it rests its decision on a clearly erroneous finding of a material fact." *In re Brotby*, 303 B.R. 177, 184 (9th Cir. BAP 2003). Conclusions of law are reviewed de novo. *In re Rains*, 428 F.3d at 900.

An oversecured creditor may recover reasonable fees, costs, or charges provided for in the agreement under which the secured claim arose. 11 U.S.C. § 506(b). An oversecured creditor is entitled to attorney's fees "if (1) the claim is an allowed secured claim; (2) the creditor is oversecured; (3) the fees are reasonable; and (4) the fees are provided for under the agreement." *In re Hoopai*, 581 F.3d at 1098 (quotation omitted).

Debtor does not dispute that CAB had a secured claim, was oversecured, and the underlying agreements provided for recovery of attorney's fees. Debtor challenges only whether the requested fees were reasonable. Under § 506(b), fees are reasonable if the incurred fees "fall within the scope of the fees provision in the agreement," and the creditor "took the kinds of actions that similarly situated creditors might reasonably conclude should be taken . . . ." *In re Kord Enters. II*, 139 F.3d 684, 689 (9th Cir. 1998) (quotation omitted). "Reasonableness embodies a range of human conduct." *In re Dalessio*, 74 B.R. 721, 723 (9th Cir. BAP 1987). However, a bankruptcy court "should not reward a creditor whose overly aggressive attorney harasses and opposes the debtor at every stage of the bankruptcy proceeding, nor should an oversecured creditor be given a blank check to incur fees and costs which will automatically be reimbursed out of its collateral." *Id.* The question is whether, "considering all relevant factors including duplication, the creditor reasonably believed that the services employed were necessary to protect his interests in the debtor's property." *Id.*

Debtor raises three objections to CAB's fees. First, Debtor argues CAB did not act as a reasonable oversecured creditor and should not be allowed fees for its overly aggressive conduct. Second, Debtor argues CAB charged for work that was unnecessary and duplicative, was unsupported by documentation, or charged attorney fee rates for administrative work. Finally, Debtor argues that CAB wrongfully pushed Debtor into liquidation instead of reorganization, and CAB therefore should not be permitted to recover default interest.

**A. Reasonable Actions**

Debtor contends a secured creditor would act only to ensure it received full payment, and CAB's claim was fully secured. Debtor contends CAB nevertheless took actions which

reasonable creditors would not have taken because CAB wanted to own the property outright rather than simply protect its secured interest in the note. CAB responds that its conduct was reasonable and justified based on Debtor's conduct in the bankruptcy proceedings.

Debtor has not shown the bankruptcy court abused its discretion. Debtor does not identify any legal error or any clearly erroneous finding of material fact that would support reversal. The underlying note and deed of trust allowed for the recovery of costs of collection, including reasonable attorney's fees, and to move for appointment of a receiver. (Dkt. #18-2 at 24; Dkt. #18-4 at 22-27.) The record shows CAB incurred fees protecting its interest in the property in response to Debtor's misleading disclosure statement, and in response to a proposed plan of reorganization that scheduled payments to CAB over ten years and potentially created an artificially impaired class to allow for confirmation over CAB's objection.[5] (*See, e.g.*, Dkt. #18-8 at 20-29; Dkt. #18-9 at 1-7, 16-26; Dkt. #18-10 at 1-16, 19, 24; Dkt. #34-2 at 14-56; Dkt. #34-3 at 60.) CAB prevailed on its motions to appoint a trustee and eventually to convert the case, suggesting it did not engage in frivolous, unwarranted, or unreasonable conduct. I find no basis to overrule the bankruptcy court's fee award based on CAB's allegedly aggressive actions.

### B. Duplication, Inadequate Records, Administrative Work

Debtor has not shown the bankruptcy court abused its discretion by reducing the attorney's fee award by only $15,000 for duplicative and administrative work. Debtor does not identify any legal error or any clearly erroneous finding of material fact that would support reversal. Debtor's opening brief on appeal does not cite to any record evidence supporting its objection on this basis, and Debtor offers no analysis as to why the bankruptcy court's finding that $15,000 was an appropriate reduction was clearly erroneous. I therefore affirm the bankruptcy court's conclusion that $15,000 is the appropriate reduction for duplicative and administrative work.

---

[5] *See* 11 U.S.C. § 1129(a)(10) (requiring at least one impaired class to vote to accept the plan for the plan to be confirmed).

### C. Default Interest

Debtor argues that the bankruptcy court erred by awarding default interest because CAB's overly aggressive conduct wrongfully pushed Debtor to liquidate. The note provided for default interest upon an event of default. (Dkt. #18-2 at 23-24.) As discussed above, Debtor has not established CAB engaged in overly aggressive tactics. Even if CAB was overly aggressive, Debtor has not identified any legal or contractual basis to conclude that a proper remedy would be denial of default interest. I therefore affirm the bankruptcy court's award of default interest.

### V. Conclusion

IT IS THEREFORE ORDERED that the bankruptcy court's Order on Objections to Secured Claim of CAB Properties, LLC is hereby AFFIRMED.

DATED this 22nd day of October, 2014.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE